**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

CLIFFORD L. LALLA,
      Plaintiff,

vs.

CAMBRIDGE SECURITY
SERVICES CORPORATION.
a Florida corporation,
        Defendant.

                            /

                                         **COMPLAINT**

Plaintiff, Clifford L. Lalla, by his undersigned counsel, hereby files this Complaint, against the Defendant, Cambridge Security Services Corporation, a Florida corporation, and in support hereof, Plaintiff states as follows:

**I.**
**PRELIMINARY STATEMENT**

1.   This action is brought pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S. C. Section 12101, *et seq.,* which prohibits disability discrimination, against employees, in the workplace, as well as the amendments thereto, ADAAA of 2009; and in addition, this case is brought under the anti-retaliation clause of the ADA, 42 U.S.C. Section 12203, which forbids predicate acts of workplace retaliation, taken against those employees, including the Plaintiff herein, for expressing opposition to any practice, made unlawful, under the ADA.

1

2. Plaintiff was subjected to several predicate acts of retaliation, including termination, following his return from work, on November 18, 2018.

3. This action is further brought for equitable relief, under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001, *et seq*., and particularly, Section 510, 29 U.S.C. Section 1140, to redress the Plaintiff's illegal discharge, which was done pretextually, and with the purpose of interfering with a right, the continuation of health care benefits, to which he would have been entitled, under an applicable employee benefit plan.

4. This action is also brought pursuant to the anti-retaliation provision of the Family Medical Leave Act of 1993 ("FMLA"). 29 U.S.C. Section 2615 (a)(2), wherein employers are prohibited from taking retaliatory acts, including the imposition of a termination, against employees, who exercise their protected rights under the FMLA.

## II.
## JURISDICTION AND VENUE

5. Jurisdiction over the Plaintiff's claims is conferred on this Court, pursuant to 29 U.S.C. Section 1132, 28 U.S.C. Section 1331 and 28 U.S.C. Section 1343 (a)(4).

6. Venue is properly placed in this district, pursuant to 28 U.S.C. 1391(b), because for all applicable dates and times, as set forth in this Complaint, the predicate discriminatory and retaliatory acts, as well as the acts underlying applicable statutory violations, occurred within the Southern District of Florida.

7. On or about December 19, 2019, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging claims of disability discrimination and retaliation.

8. On September 16, 2021, the Equal Employment Opportunity Commission stated that there was reasonable cause to conclude, that the Defendant, herein, Cambridge Security Services Corporation, acting through its agents, representatives and or employees, committed violations of the applicable statute, the Americans with Disabilities Act of 1990, as well as the Amendments thereto, ADAAA of 2009. [*See*, the EEOC's Finding of Reasonable Cause, attached hereto, as **EXHIBIT A**].

9. On November 17, 2021, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue Letter to the Plaintiff, Clifford L. Lalla, providing him, within ninety (90) days in which to file suit in federal district court. [*See*, the EEOC's Right to Sue Letter, attached hereto, as **EXHIBIT B**].

10. Plaintiff has initiated this action within ninety (90) days of his receipt of the Right to Sue Letter from the EEOC.

11. All conditions precedent have indeed, been satisfied, prior to the initiation of this action, in the federal district court.

### III.
### PARTIES

12. Plaintiff, Clifford L. Lalla ("LALLA"), at all material times herein, was employed as the Director of Security, for the Defendant, Cambridge Security Services Corporation, he

primarily discharged his job assignments, at one of the sites the Defendant services, known as, "Frenchman's Reserve," and he performed his duties in this position, in Palm Beach Gardens, which is located in Palm Beach County, Florida.

13. Defendant, Cambridge Security Services Corporation, provides protection and security services, to commercial and residential clients, located in Palm Beach Gardens, Palm Beach County, Florida.

## IV.
## FACTUAL ALLEGATIONS

14. In March of 2017, Plaintiff began his employment with the Defendant as the Director of Security; and prior to his hospitalization on July 29, 2018, he was not required to obtain approval for all of his acts as the Director of Security, from Chief Operating Officer Jim D'Arcy, and consequently, LALLA had a great deal of personal autonomy, in carrying out his routine job functions and assignments.

15. Plaintiff is a "qualified individual with a disability," pursuant to the ADA, and the amendments thereto, ADAAA of 2009.

16. Since the date of his hire in March of 2017, and continuing to July of 2018, Plaintiff received at least two bonus payments, from the Defendant in recognition of his exemplary job performance, and the issuance of these merit-based bonuses, were highly unusual, for employees at his grade level with the Defendant.

17. During this period, the Plaintiff also received performance awards, based on his job performance, at his primary area of responsibility, the Frenchman's Reserve Community,

4

and he also received an award from the Defendant, based upon his work during the Hurricane Irma emergency.

18. On July 29, 2018, Plaintiff was hospitalized due to his disability and associated medical conditions.

19. As a result of the hospitalization and the recovery period, Plaintiff was absent from work, due to a medical leave of absence, from July 29, 2018, to November 15, 2018.

20. The absence from work was extremely difficult for the Plaintiff, since during this time, he had to physically rehabilitate himself; and for example, he was required to learn new skills for basic daily tasks, such as walking and speaking.

21. During his medical leave of absence, Plaintiff incurred approximately One Hundred Thousand Dollars ($100,000.00) in applicable medical bills, for his medical treatment and extensive motor and physical rehabilitation.

22. Upon information and belief, the Defendant is self-insured, in that it has first party responsibility for medical costs, incurred by its employees, or in other words, this was a self-funded plan, and unfortunately, the Defendant failed to take any financial responsibility, for the payment of the Plaintiff's applicable medical bills, even though applicable medical premiums were being deducted from the Plaintiff's paycheck.

23. On August 5, 2019, the United States Department of Labor ("DOL") contacted Defendant's management, and Defendant's supervisory personnel were informed that DOL was investigating the repeated denials of his medical claims by the Defendant, specifically, DOL informed the Defendant's Human Resources Manager, Julieen Hewitt, of the

improper medical claim denials; and just four (4) days later, on August 9, 2019, Plaintiff was wrongfully terminated from his position with the Defendant, or pretextual reasons.

24. The Defendant had failed to pay Plaintiff's necessarily incurred medical expenses, until calendar year 2020, almost two years after this obligation had become due to be paid.

25. In terms of the return of the Plaintiff to work, his treating physicians had prescribed and Defendant's supervisory personnel were fully aware that, based upon the extensive motor and physical rehabilitation, which he had undergone during the medical leave, initially, optimal work performance would not be achievable, without a phase-in or accommodation period of between three to four months, management never took this needed adjustment period into consideration.

26. Contrary to the Defendant's contention, LALLA did not send an inappropriate e-mail message to management on or about November 30, 2018, and in fact, he was in the process of making a correction, or providing remediation, when D'Arcy immediately cut him off and would not allow an explanation, and this sequence of events was also made a basis for pretextual discipline, a suspension of four days, until December 4, 2018; at most, there was merely a miscommunication here, since LALLA was speaking more slowly upon his return to work because of the applicable medical condition; management did not have a legitimate justification for the issuance of a four day suspension.

27. Again, with regard to the four day suspension, which was implemented on November 30, 2018, the Plaintiff merely sent an e-mail message to D'Arcy, as well as to other company officials, Ed Latalladi and the Director of Security for Admiral's Cove, stating that there

was a Captain on Plaintiff's assigned property, Frenchman's Reserve, for two hours, interviewing officers at the gate, and Plaintiff merely expressed his concern, that apparently a captain from another property was interviewing his officers, there is nothing negative or untoward about Plaintiff's actions here, he was merely doing his job as an inquisitive manager.

28. D'Arcy proceeded to provide another written reprimand to the Plaintiff, on January 8, 2019, for the same previous conduct, allegedly occurring on November 30, 2018, which was in no way, improper or objectionable, further reprimands based on the same conduct, which was not in any way, improper, is further evidence of the Defendant's pretextual motivation.

29. Moreover, in summary, upon the Plaintiff's return to work, from the medical leave on November 18, 2018, the Defendant imposed predicate acts of retaliation against him, including the following adverse actions:

    (a) Although the Defendant was claiming insubordination for alleged time and attendance issues, and a written reprimand for this alleged infraction was issued on January 2, 2019, there were no irregularities in the Plaintiff's time sheets and payroll records, moreover, Plaintiff always covered his work hours, thereby disproving the pretextual nature of the disciplinary allegations; in addition, Plaintiff voluntarily undertook additional shifts, to fill in scheduling gaps;

    (b) The January 2, 2019 written reprimand, which focused on attendance issues, was authored by Chief Operating Officer ("COO") Jim D' Arcy ("D'ARCY"); however,

the allegations were patently false, because Plaintiff was working more hours than was required on his regular shifts;

(c) Contrary to the Defendant's initial disciplinary allegation, no bona fide disciplinary infraction had occurred on December 31, 2018, LALLA was not required to account for every minute of his professional time with D'Arcy, this was the process and procedure, followed by Plaintiff, without incident, prior to his medical leave of absence, and in addition, Plaintiff always made up any hours in subsequent shifts, and this process and or procedure had always been acceptable to management prior to the medical absence; in addition, LALLA had merely asked D'Arcy to memorialize their December 31, 2018 conversation, and in reality, D'Arcy basically turned around and made his written response a pretext for a January 2, 2019, written disciplinary action;

(d) Contrary to management's allegations, Plaintiff was never rude, or discourteous, to D'ARCY, the fact of the matter is that the Plaintiff's speech was slowed and somewhat difficult to understand, due to a diminished neurological condition; however, because management perceived Plaintiff's conduct as being insubordinate, he was then subjected to a suspension;

(e) There was absolutely no truth to management's allegations that Plaintiff failed to maintain company vehicles in clean, good working order, nor did LALLA fail to safeguard company equipment; therefore, this allegation was also highly pretextual; and hence, there was no factual basis to the written reprimand of March 14, 2019; and

(f) Multiple disciplinary sanctions were imposed by management for Plaintiff's conduct on November 30, 2018, including a four day suspension, but prior to the imposition of the four day suspension, the Plaintiff had merely inquired to the reason justifying the training of employees from other sectors at his duty station.

30. On August 9, 2019, Plaintiff was terminated by D'ARCY, allegedly because a vendor and an employee of that vendor, had filed complaints against him; at least one month prior to the dismissal, however; no evidence of these purported complaints were ever provided to the Plaintiff; at or prior to the dismissal, and moreover, as previously noted, the dismissal occurred just four days after, the United States Department of Labor ("DOL") contacted Defendant's management, and Defendant's supervisory personnel, specifically, the Human Resources Manager, Julieen Hewitt, was duly informed, that DOL, that it was investigating the repeated improper and unlawful denials of his bona fide medical claims by the Defendant.

31. Contrary to management's representations, LALLA did not treat a vendor in a disrespectful manner, in July of 2019, and the fact that Plaintiff was never informed about this alleged misconduct, at or during the dismissal of August 9, 2019, certainly lends further credence to his contention that the termination was pretextual.

32. The vendor which is allegedly at issue for the purported July, 2019 incident, is a car repair shop, for which Plaintiff is familiar, but he expressly denies that he treated this vendor with any disrespect, or discourtesy.

9

33. All of these alleged business justifications for implementing the Plaintiff's termination, were inherently false, and therefore, these reasons were entirely pretextual.

34. After the return of the Plaintiff to work, specifically, on March 18, 2019, he complained to the Defendant's Human Resources Manager, Julieen Hewitt ("HEWITT"), about being subjected to disability discrimination in the workplace, with regard to the November 30, 2018 suspension, and the January 8, 2019. reprimand for actually doing his job, inquiring of training at his job site, but to the best of Plaintiff's knowledge no actions were taken by the Human Resources Department, to address the Plaintiff's complaint, and or to offer any reasonable steps of remediation.

**COUNT I**
**(VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, DISABILITY DISCRIMINATION)**

35. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—34 of the Complaint, as if fully set forth herein.

36. LALLA possessed the requisite knowledge, skill and experience, to perform the essential functions of the Director of Security Position, with the Defendant herein.

37. LALLA was and continues to be "a qualified individual with a disability," under the Americans with Disabilities Act, 42 U.S. C. Section 12101, *et seq.,* and the 2009 amendments, thereto.

38. LALLA claimed that he was being discriminated against in the workplace, based on his protected status, as "a qualified individual with a disability."

39. Management failed to take any reasonable steps to address the discrimination, which Plaintiff was being subjected to in the workplace.

40. By failing to take any remedial or responsive action, with regard to the Plaintiff's complaints of disability discrimination, the Defendant violated the Americans with Disabilities Act, 42 U.S. C. Section 12101, *et seq.,* and the 2009 amendments, thereto.

41. As a direct result of the Defendant's unlawful conduct, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

    **WHEREFORE**, the Plaintiff, Clifford L. Lalla, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to:

    A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

    B) Grant an award of front pay, and back pay against the Defendant;

    C) Grant an award of compensatory damages against the Defendant; and

    D) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

## COUNT II
### (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, RETALIATION)

42. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—34 of the Complaint, as if fully set forth herein.

43. LALLA possessed the requisite knowledge, skill and experience, to perform the essential functions of the Director of Security Position, with the Defendant herein.

44. LALLA was and continues to be "a qualified individual with a disability," under the Americans with Disabilities Act, 42 U.S. C. Section 12101, *et seq.,* and the 2009 amendments, thereto.

45. LALLA was subjected to several predicate acts of retaliation in the workplace, as previously set forth in Paragraphs 26—29 (a)—(f), and Paragraphs 30--31 above, culminating in his dismissal from employment, on August 9, 2019, after specifically complaining about disability discrimination, on or about March 18, 2019, to the Defendant's Human Resources Manager, Julieen Hewitt.

46. Plaintiff's complaint of discrimination to Ms. Hewitt, included the November 30, 2018 suspension, as well as the January 8, 2019, reprimand, allegedly serving as a "final written warning," but this written reprimand of January 8, 2019, was based on the same prior conduct of November 30, 2018, where Plaintiff merely expressed some concerns about the fact that employees from other sectors, were training at his regular work site.

47. The Americans with Disabilities Act of 1990, 42 U.S.C. Section 12203, *et seq.,* contains an anti-retaliation provision, prohibiting employers from implementing adverse personnel actions against their employees, who express protected activity, by making an internal complaint of discrimination, *see also*, 28 C.F.R. Section 35.134.

48. As a direct result of the Defendant's unlawful retaliatory conduct, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, Clifford L. Lalla, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to:

- A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

- B) Grant an award of front pay, and back pay against the Defendant;

- C) Grant an award of compensatory damages against the Defendant; and

- D) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

### COUNT III
### (VIOLATION OF ERISA, 29 U.S.C: 1140)

49. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—34 of the Complaint, as if fully set forth herein.

50. The Defendant is an employer, engaged in an industry, or activity, affecting commerce, within the meaning of 29 U.S.C. Section 1002(5) and 12.

51. The Defendant is both the "plan sponsor," under 29 U.S.C. Section 1002(16)(A) and the "plan administrator," under 29 U.S.C 1002(16 (B).

52. The Defendant is self-insured, in that it has first party responsibility for medical costs, incurred by its employees, in other words, this was a self-funded plan, and the Defendant

failed to take any responsibility for the payment of the Plaintiff's applicable medical bills, even though applicable medical premiums were being deducted from the Plaintiff's paycheck.

53. During his medical leave of absence, from July 29, 2018, to November 15, 2018, Plaintiff incurred approximately $100,000.00, it medical bills, for which the Defendant failed and or refused to offer reimbursement.

54. On August 5, 2019, the United States Department of Labor ("DOL") contacted Defendant's management representatives, and Defendant's supervisory personnel were informed by DOL Investigators, that the agency, DOL, was investigating the repeated denials of Plaintiff's medical claims by the Defendant; and just four days later, on August 9, 2019, Plaintiff was wrongfully terminated from his employment with the Defendant, for pretextual reasons.

55. Defendant's termination of Plaintiff on August 9, 2019, was patently illegal and pretextual; the Defendant's conduct interfered with the Plaintiff's right to continue to receive health care benefits, under the Defendant's self-funded healthcare plan, and these acts, by the Defendant violated, culminating in the Plaintiff's discharge from employment, violated 29 U.S.C. Section 1140.

56. As a direct result of the Defendant's unlawful conduct, in violation of ERISA, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, Clifford L. Lalla, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

B) Grant full equitable relief under ERISA, 29 U.S.C. Section 1001, et seq., including back pay, reinstatement, restitution of lost employee benefits, as well as prejudgment interest;

C) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

D) Grant any and all further relief, which this Court deems ton be just, proper and equitable.

### COUNT IV
### (VIOLATION OF THE FMLA, RETALIATION)

57. The Plaintiff restates and re-avers the allegations contained in Paragraphs 1—34 of the Complaint, as if fully set forth herein.

58. The Plaintiff is bringing a retaliation claim, pursuant to 29 U.S.C. Section 2615 (a)(2), since he took a bona fide, justifiable and approved medical leave of absence, from July 29, 2018, to November 15, 2018.

59. Following the return of the Plaintiff to work on November 15, 2018, he was subjected to
    the following predicate acts of retaliation, which culminated in his discharge from
    employment on August 9, 2019:

    (i)     Although the Defendant was claiming insubordination and time and attendance
            issues, there were no irregularities in the Plaintiff's time sheets and payroll records,
            disproving the pretextual allegations; in addition, Plaintiff voluntarily undertook
            additional shifts, to fill in scheduling gaps;

    (ii)    The written reprimand of January 2, 2019 focused on attendance issues, was
            authored by Chief Operating Officer ("COO") Jim Darcy ("DARCY"); however,
            the allegations were patently false, because Plaintiff was working more hours than
            was required on his regular shifts;

    (iii)   Contrary to management's allegations, Plaintiff was never rude or discourteous to
            D' ARCY, the fact of the matter is that the Plaintiff's speech was slowed and
            somewhat difficult to understand, due to a diminished neurological condition;
            however, because management perceived Plaintiff's conduct as being
            insubordinate, he was then subjected to a suspension, from November 30, 2018, to
            December 4, 2018;

    (i)     In addition to the November 30, 2018, four-day suspension, Plaintiff was
            disciplined a second time on January 8, 2019, for the same alleged conduct,
            management claimed to impose a "final written warning," on January 8, 2019, when

16

in reality, the Plaintiff was merely questioning staffing at his work station, and such an act is certainly within the purview of authority, as the Director of Security;

(ii)    There was absolutely no truth to management's allegations that Plaintiff failed to maintain company vehicles in clean, good working order, or that he failed to safeguard company property, these allegations are also pretextual; and

(iii)   The August 9, 2019 termination was pretextual, Plaintiff was never informed about being discourteous to a vender, during the prior month, the absence of a reason for the termination, contemporaneous to the dismissal, lends credence to the claim of pretext.

60. This sequence of events represents a continuum of retaliatory acts, perpetrated by management, which culminated in the Plaintiff's discharge from employment, on August 9, 2019.

61. The adverse employment actions taken together, by the Defendant, against the Plaintiff was causally related to the Plaintiff's prior expressions of protected activity, specifically that he took a medical leave of absence, July 29, 2018, that resulted in a series of retaliatory actions that ultimately resulted in the discharge of the Plaintiff from his employment.

62. As a direct result of the Defendant's unlawful conduct, in violation of the anti-retaliation provision of the FMLA, the Plaintiff has been compelled to retain the undersigned attorney, and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, Clifford L. Lalla, respectfully requests that this Court advance this case on the docket, order a hearing at the earliest possible date, and upon hearing to:

A) Enjoin the Defendant, its supervisory agents, representatives and or employees, and those acting in concert with the Defendant, from continuing to violate the rights of the Plaintiff;

B) Grant to the Plaintiff an award of back pay, along with prejudgment interest;

C) Grant to the Plaintiff an award of liquidated damages; and

D) Award the Plaintiff the costs of this action, including reasonable attorney's fees, and any and all such further relief, as this Court may deem to be just proper and equitable.

**Demand for Trial by Jury**

Plaintiff requests trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

Dated on this 11th day of January, 2022.